# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2688

_____

| | | |
|---|---|---|
| Odis Ross, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Douglas County, Nebraska, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted:  October 24, 2000

Filed:   December 11, 2000

_____

Before McMILLIAN, LAY, and ROSS, Circuit Judges.

_____

LAY, Circuit Judge.

## I.  BACKGROUND

Odis Ross sued his former employer, Douglas County, under Title VII of the Civil Rights Act of 1964, alleging disparate treatment, retaliation, and hostile work environment.  The district court[1] entered judgment on the jury verdict awarding Ross back pay and  $100,000 for emotional damages.  This appeal followed; we affirm.

_____

[1]The Honorable Thomas M. Shanahan, United States District Court Judge, presiding.

Ross, a black male, worked at the Douglas County Correctional Facility from May 1990 to April 1997 when he resigned. In 1995, Tim Dempsey was retained as the administrator, and Larry Johnson, a black male, was appointed Ross' supervisor. Soon after the change in administration, Johnson began using racial epithets when addressing Ross. He continued to address him as "nigger," "black boy," and occasionally referred to his wife, who is white, as "whitey." Ross protested and asked that he be addressed as Officer Ross. Ross filed a grievance in September 1996. This did not resolve the situation, and Johnson continued using racial slurs in addressing Ross.

While Ross was off work because of a work-related foot injury, he filed a complaint with the Nebraska Equal Opportunity Commission (NEOC)[2] in December 1997. When he returned to work, he was assigned to a control room called the "bubble." This was considered the most difficult assignment because it housed 108 inmates and did not allow any break for the officer in charge. Arthur Marr, an Administrative Assistant for Inmate Services, testified that Ross was ordered to be assigned to the "bubble" permanently so that he would become upset and quit. Marr testified that the assignment was made in retaliation for Ross' filing of his racial discrimination complaint.

Because of his foot injury, when Ross returned to work in 1997, he wore special shoes prescribed by his physician. The officer who made uniform inspections testified he was directed to make certain that Ross had a doctor's excuse at each inspection. A white female worker wore non-regulation shoes for medical reasons, and she was not questioned.

---

[2]Several of Ross' charges were filed with the NEOC and the Equal Opportunity Commission (EEOC). We refer to these charges generally and make mention only of the NEOC.

Because of these events, on March 26, 1997, Ross filed an amended charge with the NEOC alleging retaliation and disparate treatment. Just a few days after this new filing, on March 31, 1997, Ross decided to resign, and submitted a letter of resignation to William McPhillips, the Chief Warden of the facility, effective April 8, 1997. On April 2, 1997, Ross decided he did not want to leave his job, and submitted a letter to withdraw his resignation to a different supervisor. He received no response, so he drafted a second letter and again sent copies to his superiors. McPhillips told Ross that Ross could not withdraw his resignation, but would have to re-apply. On April 8, 1997, Ross reported to work, and was informed that he was no longer on the schedule.

Marr protested to McPhillips that Ross should be allowed to withdraw his resignation as other white officers had been allowed to do in the past. McPhillips told Marr that "Ross was a 'black radical,' and if he would allow him to come back, all he's going to do is stir up the black officers." According to Marr, McPhillips stated that the reason Ross would not be allowed to return was because Ross had filed his discrimination charge.

In January 1998, Ross amended his discrimination charge with the NEOC and stated he had been forced to resign his position on April 8, 1997. Thereafter, the present action was brought.

## II. DISCUSSION
### A. Motion in Limine

Before trial, Douglas County filed a motion in limine to exclude any evidence regarding Ross' attempt to withdraw his resignation, arguing that Ross did not exhaust his administrative remedies on this issue. The trial court denied these requests. When

such evidence was introduced at trial, Douglas County failed to object.[3]  While we might face a different question had Douglas County objected at trial, we believe that the trial court's admission of this evidence was not so egregious as to be plain error.[4]

---

[3]The general rule in this circuit is that a motion in limine does not preserve error for appellate review.  See Hale v. Firestone Tire & Rubber Co., 756 F.2d 1322, 1333 (8th Cir. 1985).  Douglas County believes that this court's decision in Sprynczynatyk v. General Motors Corp., 771 F.2d 1112 (8th Cir. 1985), excuses its failure to object.

In Sprynczynatyk, admission of hypnotically induced evidence was challenged by a motion in limine, but not objected to at trial.  The Sprynczynatyk court departed from the general rule that motions in limine do not preserve error for two reasons.  First, the Sprynczynatyk court held that an objection would have been in the nature of a "formal exception" because "the district court made a definitive pre-trial ruling" that "was not made conditionally or with the suggestion that the matter would be reconsidered."  Id. at 1118.  Second, the court noted "when the district court denied the motion in limine it implicitly denied GM's alternative request that the plaintiffs be required to establish before trial the reliability" of the hypnotically induced evidence.  Id. at 1119.  Because of this, the Sprynczynatyk court believed "[t]here can be no question" that the issue of the hypnotically induced testimony was "squarely before this court and is not contingent upon the making of any objection during the trial."  Id.

Neither of these facts are present here.  First, unlike Sprynczynatyk, the trial court repeatedly instructed counsel to formally object at trial to the admission of the evidence in question.  Second, unlike the reliability question in Sprynczynatyk, the evidence in question would not be before this court absent preservation at trial by Douglas County.  Douglas County argues that we should forgive the lack of an objection, because an objection would have been a mere formality: the trial court's legal ruling would not have been altered by different factual circumstance that developed at trial. Were we to accept this argument, however, it would undermine the general rule in this circuit that motions in limine do not preserve appellate review.  Because Douglas County's motion in limine did not preserve appellate review, we review the introduction of such evidence for plain error.

[4]This court reviews evidence introduced at trial, but not objected to, under a plain error standard.  See Berry v. Battey, 666 F.2d 1183 (8th Cir. 1981).  Plain error

-4-

Title VII includes a mandatory exhaustion requirement whereby claims must first be presented to the NEOC before a plaintiff can sue in Federal Court. See Williams v. Little Rock, 21 F.3d 218, 222 (8th Cir. 1994). A plaintiff may seek relief "for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." Stuart v. General Motors, 217 F.3d 621, 631 (8th Cir. 2000) (quotations omitted). Ross' final petition to the NEOC incorporated his past petitions (including references to retaliation and disparate treatment claims) and added that on April 8, 1997, he was forced to resign his position. Given our plain error standard of review and that we construe administrative claims liberally to further the administrative purposes of Title VII, we believe Ross' termination was sufficiently related to the additional charges included in the April 8, 1997 amendment to his NEOC complaint, and thus, the district court did not plainly err by allowing evidence relating to Ross' termination.

## B. Sufficiency of Evidence

Douglas County argues that there was insufficient evidence to support the jury verdict on any of the three charges of racial discrimination: disparate treatment, hostile work environment, and retaliation. We disagree, and hold there is sufficient evidence to support the jury's verdict on all charges.

### 1. Retaliation

In order to support a claim of retaliation, Ross must show (1) he filed a charge of harassment; (2) subsequent adverse action by the employer; and (3) the adverse

---

is reserved for "the exceptional case where the error has seriously affected the fairness, integrity, or public reputation of judicial proceedings." Id. at 1187 (quotations omitted). We hold the introduction of evidence regarding Ross' termination is not plain error.

action was causally linked to the protected activity.  See Scusa v. Nestle U.S.A. Co., Inc., 181 F.3d 958, 968 (8th Cir. 1999).

Douglas County first argues that Ross' assignment to the "bubble" was not sufficiently onerous to constitute retaliation:  Ross did not suffer any change in benefits or salary, rather he was merely shifted to a position he didn't like.  While it is true that not every employment action that makes an employee unhappy is an adverse employment action, see Coffman v. Tracker Marine, L.P., 141 F.3d 1241, 1247 (8th Cir. 1998), Ross suffered more than a "mere inconvenience or an alteration of job responsibilities . . . that cause[d] no materially significant disadvantage."  See Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994).  In retaliation for filing the NEOC complaint, McPhillips assigned Ross full-time to the "bubble," a position Douglas County routinely rotated employees through because of the stressful nature of the duties; in fact, Ross was the only person who was ever assigned full-time to the "bubble."   Further, McPhillips told Marr that Ross would not be allowed to re-apply for his position in part because Ross filed the NEOC complaint.  We believe either of these facts, standing alone, constitutes the kind of "materially significant disadvantage" contemplated by our case law. Id.  Combined, these facts show a pattern of systematic retaliation "taken in response to [Ross'] filing the employment discrimination charge." See Kim v. Nash Finch Co., 123 F.3d 1046, 1060 (8th Cir. 1997).

*2.  Hostile Work Environment*

For Ross to make a prima facie case of hostile work environment, he must show (1) he belonged to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based upon race; (4) the harassment affected a term, condition, or privilege of his employment; and (5) the employer knew or should have known of

the harassment and failed to take proper remedial action.[5]  See Howard v. Burns Bros., Inc., 149 F.3d 835, 840 (8th Cir. 1998).  Douglas County argues that Ross failed to show (1) the harassment was based upon his race; and (2) the harassment affected a term, condition, or privilege of his employment.

Title VII of the Civil Rights Act of 1964 provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  See 42 U.S.C. §2000e-2(a)(1).  Ross' NEOC charge asserted that he was subjected to verbal racial harassment by Johnson's use of racial epithets.  Douglas County argues that, as Johnson was a black male, he could not have had the racial animus required to support a hostile work environment claim.  This argument, however, ignores the Supreme Court's opinion in Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998).

In Oncale, a male was subjected to repeated sex-related humiliating actions by other males with whom he worked.  The Supreme Court held that "nothing in Title VII necessarily bars a claim of discrimination . . . merely because the plaintiff and the defendant . . . are of the same sex."  Id. at 79.  See also Castaneda v. Partida, 430 U.S. 482, 499 (1977) ("Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group.")  Given the Oncale decision, we have no doubt that, as a matter of law, a black male could discriminate against another black male "because of such individual's race."  Such comments were demeaning to

---

[5]Although this element is normally a part of a prima facie case for hostile work environment, it is not an issue in the present case, as Ross alleges that most of the harassment was at the hands of his supervisors.  See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 764-65 (1998) (holding employers are vicariously liable for hostile work environment harassment perpetrated by a supervisor).

Ross. They could have been made to please Johnson's white superior or they may have been intended to create a negative and distressing environment for Ross. However, whatever the motive, we deem such conduct discriminatory.

The next question is whether a reasonable jury could have concluded that Johnson's harassment was because of Ross' race. We believe that a reasonable jury could have so concluded. Douglas County argues that it was uncontradicted on the record that Johnson treated everyone the same regardless of race. Racial epithets such as "nigger" or "black boy," however, would not be used against a white person -- such use would make little sense.[6] The only reason that Johnson used such racial epithets was because of Ross' race. We are well aware that Title VII should not turn into "a general civility code," see Oncale, 523 U.S. at 80, but Johnson's epithets go beyond mere incivility: the only reason Ross was called a "nigger" was because he was black -- that Johnson was also black does not alter this.

Douglas County's second argument, that Johnson's use of racial epithets did not affect a term or condition of his employment, also fails. In order for harassment to be severe enough to affect a condition of employment, the conduct must be severe "as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim." See Howard, 149 F.3d at 840. In Delph v. Dr. Pepper Bottling Co., 130 F.3d 349 (1997), this circuit held that an employee who alleged a stream of racial slurs directed toward him made a sufficient showing that he was subjected to a racially hostile workplace. See id. at 357. To escape the force of Delph, Douglas County argues that Ross has not alleged a similar stream of racial insults. While it is true that Ross' NEOC complaint alleged only a few specific incidences of racial harassment, there was evidence at trial that Johnson constantly referred to Ross

---

[6]Indeed, given the racist attitude that permeated the prison, it is highly unlikely that Johnson would have felt comfortable using corresponding racial epithets against white employees.

by a racial epithet. That Ross has not specifically alleged each individual incident does not defeat his claim. See Ways v. City of Lincoln, 871 F.2d 750, 755 (8th Cir. 1989) (upholding finding of racially hostile work environment, despite only a few listed incidents of racial slurs, because the listed incidents were "simply examples of the offensive racial incidents [plaintiff] has encountered during his career.").

### 3. Disparate Treatment

Through the testimony of Marr, Ross introduced direct evidence of racially disparate treatment against him on the part of McPhillips. Under the burden-shifting test from Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), once plaintiff introduces direct evidence of discrimination, the burden shifts to the employer to show, by a preponderance of the evidence, "that it would have made the same decision even if it had not taken the plaintiff's [race] into account." Id. at 258. Douglas County believes that a reasonable jury must have concluded that Ross would not have been rehired even if his race had not been taken into account for two reasons: (1) Ross' abuse of sick leave; and (2) Ross' position had already been filled. Both of these arguments, however, fail.

In Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444 (8th Cir. 1993), this circuit faced a sufficiency of the evidence challenge by an employer against a Price Waterhouse verdict. In dismissing the claim, this court noted that the introduction of "sufficient evidence to support a jury finding that . . . discrimination was a motivating factor" in the decision to discharge was "the threshold requirement for a Price Waterhouse instruction." Id. at 450. Marr's testimony that McPhillips told him that Ross would not be allowed to get his job back because Ross was a "black radical" who would stir up other black employees was clearly enough direct evidence to support a Price Waterhouse instruction, and thus, to support the jury's verdict. While a reasonably jury could, perhaps, have accepted Douglas County excuses, this one did not.

For the above reasons, we believe that a reasonable jury could have found for Ross on his disparate treatment, hostile work environment, and retaliation claims.

## C. Damages

Ross was awarded back pay and $100,000 dollars for emotional distress and mental anguish.  Douglas County argues, relying on <u>Delph</u>, that Ross did not show sufficient evidence of damages to support this amount.  We disagree.

In <u>Delph</u>, this court reduced an award of $150,000 to $50,000, because the emotional and physical damages the plaintiff suffered were "vague and ill-defined, and are not characterized as especially intense."  <u>See</u> <u>Delph</u>, 130 F.3d at 358.  After the plaintiff in <u>Delph</u> left his job, however, he was able to get almost exactly the same job at a different company.  In contrast, Ross suffered not only emotional and physical injury, but he was forced to take a lower-paying job, without health benefits for his family.  He suffered financial strain, including the repossession of two automobiles, and a substantial curtailment of his childrens' activities.  Since Ross' damage award was $50,000 dollars less than the award in <u>Delph</u> to begin with, and he suffered greater damages than did the plaintiff in <u>Delph</u>, we believe the award of damages was reasonable.

We affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-