# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 02-1025/02-1029

_____

| | | |
|---|---|---|
| Equal Employment Opportunity Commission, | * * * | |
| Appellant, | * * | |
| v. | * * | Appeal from the United States District Court for the Western District of Missouri. |
| Liberal R-II School District, | * * | |
| Appellee. | * | |

_____

Submitted: September 12, 2002

Filed: December 31, 2002

_____

Before HANSEN, Chief Judge, RILEY, and SMITH, Circuit Judges.

_____

RILEY, Circuit Judge.

The Equal Employment Opportunity Commission (EEOC) sued the Liberal R-II School District (District) for violating the Age Discrimination in Employment Act (ADEA) when the District failed to renew the contract of 70-year old school bus driver George Trout (Trout). The district court granted summary judgment to the District and awarded it $47,332.50 for attorney fees and expenses under the Equal Access to Justice Act (EAJA). The EEOC appeals. Because sufficient direct evidence of age discrimination exists to create an issue of material fact, we reverse

the district court's grant of summary judgment and vacate the order awarding attorney fees.

## I. BACKGROUND

In October 1994, the District hired Trout as a school bus driver. At that time, Trout was 66 years old. On April 20, 1998, the District's Board of Education (Board) voted 4-1 not to rehire Trout for the following school year. The Board hired three additional bus drivers between the ages of 39 and 43. A 67-year old bus driver was reassigned to drive Trout's former route.

The Board had the sole legal authority to make the District's hiring and firing decisions. Notwithstanding, the District's superintendent, H.G. Gretlein (Gretlein), also had employee responsibilities. During the April 20 board meeting, Gretlein recommended all employment contracts be renewed, including Trout's. Gretlein was the only non-board member present during the Board's closed door meeting to deny renewal to Trout, but did not participate in the Board's discussion. He was also responsible for informing employees of the Board's decision and indeed informed Trout that the Board had decided not to renew his contract. Gretlein also represented the Board in opposing Trout's application for unemployment benefits.

In May or June 1998 (after the Board's April 20 meeting), Trout alleges he asked Gretlein why he was not going to be employed the following school year and Gretlein said "that the Board thought that [Trout] was too old." Trout also claims Gretlein informed him the Board "felt" he "was too old to drive a bus." Gretlein "absolutely" and "vehemently" denies saying Trout was fired because he was too old. The Board members deny age was discussed and deny Trout's age entered into their decision, citing instead safety concerns.

Trout applied for unemployment benefits after the District did not renew his employment contract. On the District's behalf, Gretlein protested the payment of

unemployment benefits to Trout by responding with the following written statement to the Missouri Department of Labor and Industrial Relations, Division of Employment Security:

> *On behalf of the Liberal R-II School District,* I wish to protest the payment of benefits to the above individual. Mr. George Trout had served as a bus driver for the district. *The fact that Mr. Trout is now 70 1/2 years of age* and that the public had voiced concerns about his driving safety, *his continuation as a bus driver for the coming year was not approved by the Board of Education.* The Board cited student safety as their reason for Mr. Trout's noncontinuation as a bus driver.

(Emphasis added.) When asked at his deposition why he mentioned Trout's age, Gretlein responded by saying "I really don't know. I assume that it was probably because he was retirement age." Gretlein labeled Trout's assertion that Gretlein had said the Board felt Trout was "too old" as "[l]ibelous, slanderous, whatever the word is." Gretlein did not apply a similar label to his age comment about Trout in the District's unemployment benefits response.

The District claims Trout was not rehired because of safety reasons and explains the Board discussed only safety-related issues when deciding not to renew Trout's employment contract. The District provided evidence Trout drove a bus full of children the wrong way on a highway entrance ramp. Trout claims the ramp's signs were mismarked. The District presented evidence Trout cut off another driver, but Trout claims another bus driver was involved in that incident. The District also alleged Trout pulled out in front of another driver, but Trout claims the other driver was mistaken. In the face of evidence showing Trout was an unsafe driver, the EEOC offered evidence that (1) not all Board members knew about all of these safety issues and (2) the District had not removed younger drivers when safety complaints had been lodged against them.

-3-

## II. DISCUSSION

### A. Standard of Review

The district court's grant of summary judgment to the District must be reviewed de novo, viewing the record in the light most favorable to the EEOC and giving the EEOC the benefit of all reasonable inferences. Keathley v. Ameritech Corp., 187 F.3d 915, 919 (8th Cir. 1999). This circuit "has repeatedly cautioned that summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based." Id. In addition, "[s]ummary judgment should be cautiously granted in discrimination cases because such cases often depend on inferences rather than on direct evidence." Jacob-Mua v. Veneman, 289 F.3d 517, 520 (8th Cir. 2002).

The district court's interpretation of the EAJA and its applicability to ADEA actions are legal conclusions that are reviewed de novo. Madison v. IBP, Inc., 257 F.3d 780, 796 (8th Cir. 2001), vacated by 122 S. Ct. 2583 (2002) (unrelated issue). The district court's award of attorney fees under the EAJA is reviewed under an abuse of discretion standard. Friends of the Boundary Waters Wilderness v. Thomas, 53 F.3d 881, 884 (8th Cir. 1995).

### B. Age Discrimination in Employment Act

The ADEA prohibits an employer from discharging "any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (2000). The ADEA only protects individuals who are at least forty years old. Id. at § 631. The core issue in this case is whether the District intentionally discriminated against Trout based on his age. Kneibert v. Thomson Newspapers, Inc., 129 F.3d 444, 451 (8th Cir. 1997).

The EEOC has two methods available to prove the District intentionally discriminated against Trout based on his age. First, the EEOC can utilize the Price

Waterhouse method by producing direct evidence that age "played a motivating part in [the District's] employment decision." Price Waterhouse v. Hopkins, 490 U.S. 228, 258 (1989). If the EEOC can produce such direct evidence of age discrimination, "the burden then rests with the [District] to convince the trier of fact that it is more likely than not that the decision would have been the same absent consideration of the illegitimate factor." Id. at 276 (O'Connor, J., concurring); see also id. at 258.

The second method available to the EEOC to prove intentional age discrimination is the well-established McDonnell Douglas three-part burden shifting analysis, which is used solely for cases devoid of direct evidence of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800-04 (1973). The McDonnell Douglas analytical framework using circumstantial evidence has developed because direct evidence of discrimination is rare. The Supreme Court has made the following observation: "All courts have recognized that the question facing triers of fact in discrimination cases is both sensitive and difficult. . . . There will seldom be 'eyewitness' testimony as to the employer's mental processes." United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983). This court has expounded on this observation by explaining that "'[t]here will seldom be eyewitness testimony as to the employer's mental processes' because a shrewd employer will not leave a trail of direct inculpatory evidence for the plaintiff to bring into court." Rothmeier v. Inv. Advisors, Inc., 85 F.3d 1328, 1332 (8th Cir. 1996) (quoting Aikens, 460 U.S. at 716) (alteration in original). A "smoking-gun" case in the discrimination arena is rare. Id.

Is there potential eyewitness testimony as to the Board's mental processes in this case? Has the EEOC presented direct evidence of discrimination in this case so that the Price Waterhouse standard applies? We believe so.

## C.     Direct Evidence of Age Discrimination

The Supreme Court has defined direct evidence in the negative by stating that it excludes "stray remarks in the workplace," "statements by nondecisionmakers," and "statements by decisionmakers unrelated to the decisional process itself." Price Waterhouse, 490 U.S. at 277 (O'Connor, J., concurring) ("What is required is . . . direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision."). This circuit has stated that "direct evidence may include evidence of actions or remarks of the employer that reflect a discriminatory attitude." Beshears v. Asbill, 930 F.2d 1348, 1354 (8th Cir. 1991) (quoting Gray v. Univ. of Ark., 883 F.2d 1394, 1398 (8th Cir. 1989)). In addition, "[c]omments which demonstrate a 'discriminatory animus in the decisional process' . . . or those uttered by individuals closely involved in employment decisions may constitute direct evidence within the meaning of Price Waterhouse." Beshears, 930 F.2d at 1354. As we recently stated, "[t]he direct evidence required to shift the burden of proof is evidence of conduct or statements by persons involved in making the employment decision directly manifesting a discriminatory attitude, of a sufficient quantum and gravity that would allow the factfinder to conclude that attitude more likely than not was a motivating factor in the employment decision." Erickson v. Farmland Indus., Inc., 271 F.3d 718, 724 (8th Cir. 2001). Finally, the EEOC "must present evidence showing a specific link between the discriminatory animus and the challenged decision." Stacks v. Southwestern Bell Yellow Pages, Inc., 996 F.2d 200, 202 n.1 (8th Cir. 1993).

We are presented with a troublesome case. Although we recognize the EEOC may not have a particularly strong case for a jury, we are not the jury. Our duty is to view the record in the light most favorable to the EEOC while giving the EEOC the benefit of all reasonable inferences. In doing so, we find genuine issues of material fact such that summary judgment is improper.

The District relies too heavily on the fact Gretlein was not the actual decisionmaker who decided Trout's fate. Although we agree Gretlein was not the actual decisionmaker, that does not end our direct evidence inquiry. We stress this is not a case involving a nondecisionmaker who was not involved in the decisionmaking process and who made stray age-related remarks. Instead, this case involves a nondecisionmaker who was closely involved in the decisionmaking process and who was directed to express the decision of the decisionmakers to the employee and to the Missouri Division of Employment Security. Although hotly disputed, these expressions indicated the actual decisionmakers may have based their decisions, at least in part, on age-based animus.

Gretlein was the only non-board member present when the Board decided not to renew Trout's contract. When Gretlein fulfilled his obligation of delivering the Board's decision to Trout, Gretlein reportedly said the Board decided Trout was too old to drive a bus. Gretlein "absolutely" and "vehemently" denies making this statement, and the board members deny making any age-based statements in their deliberations. Although a jury might believe Gretlein and the Board and disbelieve Trout, we cannot wholly dismiss Gretlein's alleged statements at the summary judgment stage. A jury could reasonably infer the Board made age-based comments when making its decision and Gretlein dutifully reported the Board's decision and reasons to Trout.

Are we prepared to reject potential eyewitness testimony when a plaintiff presents it? We should not. Of course, the jury will be free to reject Trout's allegation about what Gretlein told him, but we cannot do so now, as that would require credibility determinations.

In this case, Trout's self-serving testimony of what Gretlein told him does not stand alone. Gretlein also made an age-based statement to the Missouri Division of Employment Security when opposing Trout's application for unemployment benefits.

Gretlein, on "behalf of the Liberal R-II School District," said the "fact that Mr. Trout is now 70 1/2 years of age and that the public had voiced concerns about his driving safety, his continuation as a bus driver for the coming year was not approved by the Board of Education." We note even Gretlein is not sure why he made this age-related statement. Although we could certainly draw different reasonable inferences as to what Gretlein may have meant, including that he did not mean age was a reason for not renewing Trout's employment contract, we are not authorized to determine which reasonable inference is most likely. A jury is.

Our prior decisions support this conclusion. This circuit was recently confronted with a similar direct evidence case under Title VII. In Ross v. Douglas County, 234 F.3d 391, 393-94 (8th Cir. 2000), a black employee sued his former employer for disparate treatment, claiming white workers were allowed to withdraw their resignations while he was not. An administrative assistant told "the Chief Warden of the facility" that the black employee should also be allowed to withdraw his resignation as white employees had been allowed to do in the past. According to the assistant, the warden then told her that the employee "was a 'black radical,' and if he would allow him to come back, all he's going to do is stir up the black officers." Id. at 394. On appeal, we held this testimony "was clearly enough direct evidence to support a Price Waterhouse instruction, and thus, to support the jury's verdict" against the employer. Id. at 397.

As in Ross, we are also confronted with testimony by a nondecisionmaker as to what the decisionmakers said. Although we do not have a specific quote, we have even more. In Ross, the assistant was not part of the decisionmaking process, but simply testified as to the decisionmaker's statement. In our case, Gretlein was present when the Board made its decision and was required to inform Trout of the Board's decision. We believe Gretlein's statements on the Board's behalf to Trout and to the unemployment office are as much, or more, direct evidence of age animus as the assistant's testimony in Ross.

The District seems to argue that only testimony from the Board members would constitute direct evidence (*i.e.*, the Board members would have to testify they took age into account or made age-based comments in the decisional process). We have already rejected this theory. In <u>Beshears</u>, although a company president testified he did not make an age-based statement, "at least five people testified that they heard [him] make a statement to the effect that older employees have problems adapting to changes and to new policies." <u>Beshears</u>, 930 F.2d at 1354. We held this testimony, along with age-related statements by another decisionmaker, constituted direct evidence of age discrimination. <u>Id.</u>

The District and the district court rely on <u>Kells v. Sinclair Buick-GMC Truck, Inc.</u>, 210 F.3d 827 (8th Cir. 2000). In <u>Kells</u>, the plaintiff complained to the 49% owner that he had been mistreated. When told Kells was fifty, the 49% owner stated, "[w]hen you get that age, those things happen to you in our company." <u>Id.</u> at 835. We held this comment was not direct evidence of discrimination because the 49% owner was not involved in the company's management and did not actively participate in the employment decision. <u>Id.</u> In addition, his comment was not based "on any direct observations of [the employer]'s practices, policies or attitudes concerning older employees." <u>Id.</u> Gretlein, as superintendent, was involved in the District's management and did participate in the employment decision by attending the closed-door meeting and was directed to inform Trout of the Board's decision. Our decision in <u>Kells</u> simply does not preclude our finding that Gretlein's age-based statements constitute direct evidence of discrimination. If anything, it supports our decision here.

Finally, the seminal case of <u>Price Waterhouse</u> itself involved testimony of a partner involved in the partnership meeting that decided Ann Hopkins would not make partner. The partner, who bore the responsibility of informing Hopkins she did not make partner, told her that, "in order to improve her chances for partnership, . . . Hopkins should 'walk more femininely, talk more femininely, dress more

femininely, wear make-up, have her hair styled, and wear jewelry.'" Price Waterhouse, 490 U.S. at 235. This constituted direct evidence of gender discrimination. In addition, Justice O'Connor made the following observation about how Hopkins had offered as much direct evidence as she could by showing that decisionmakers had based their decisions on gender stereotypes:

> It is as if Ann Hopkins were sitting in the hall outside the room where partnership decisions were being made. As the partners filed in to consider her candidacy, she heard several of them make sexist remarks in discussing her suitability for partnership. As the decisionmakers exited the room, she was *told* by one of those privy to the decisionmaking process that her gender was a major reason for the rejection of her partnership bid.

Id. at 272-73.

This case presents a similar situation. Instead of sitting outside the room when the Board members entered and exited, Trout had the next best thing – Gretlein. Gretlein was required to, and did, inform Trout of the Board's decision not to renew his contract. At the summary judgment stage, we cannot reject as untrue the evidence of Gretlein's statements that seemingly indict the Board for making age-based comments in the decisional process.

Finally, we fully understand and appreciate that safety is the most critical issue when deciding to retain school bus drivers. Notwithstanding, the record does not clearly establish the Board would have decided not to rehire Trout based on safety issues alone. The EEOC presented evidence that some of the Board's knowledge of safety concerns arose after the decision not to rehire Trout, Trout had explanations for each safety incident, and the EEOC offered some evidence that the Board allowed younger drivers with safety complaints to continue driving. The EEOC also offered evidence at least one board member and Gretlein himself wanted Trout to drive again. Therefore, we believe a jury must decide (1) whether age played a motivating part in

-10-

the Board's employment decision, and (2) whether the Board would have made the same decision not to renew Trout's employment contract absent consideration of his age.

Because we hold that the EEOC has presented direct evidence of discrimination, the Price Waterhouse standard applies and we need not address the McDonnell Douglas standard. Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir. 1994) (citing TWA v. Thurston, 469 U.S. 111, 121 (1985)) ("If the plaintiff offers direct evidence of age discrimination, however, the McDonnell Douglas analysis is inapplicable. . . . That is, when direct evidence of discrimination exists, the plaintiff need not establish a prima facie case because creating an inference of discrimination is unnecessary.").

### D.    Attorney Fees

This circuit has not addressed whether the EAJA's substantially justified standard can be used to award attorney fees to prevailing defendants in cases brought by the United States under the ADEA. The district court awarded fees to the District after it held the EAJA applies and the EEOC was not substantially justified in bringing this action. Because we hold the EEOC was substantially justified in bringing this action and the District is not a prevailing party at this time, we do not reach the issue of whether the EAJA's substantially justified standard applies for an attorney fees award against the EEOC.

### III.    CONCLUSION

The EEOC has presented sufficient direct evidence of age discrimination to avoid summary judgment. By doing so, the EEOC was substantially justified in bringing this ADEA case against the District, and attorney fees should not have been awarded against it. Therefore, we reverse the district court's grant of summary judgment and vacate its award of attorney fees.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.