# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2032

_____

Judith Rinesmith,                           *
                                            *
        Appellant,                          *
                                            *    Appeal from the United States
    v.                                      *    District Court for the
                                            *    Eastern District of Missouri.
Central County Fire & Rescue,               *
A Fire Protection District,                 *         UNPUBLISHED
                                            *
        Appellee.                           *

_____

Submitted: January 12, 2005
Filed:  December 23, 2005

_____

Before MELLOY, SMITH, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Judith Rinesmith filed a gender discrimination claim against Central County Fire & Rescue under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, and the Missouri Human Rights Act, Mo. Rev. Stat. §§ 213.010-213.137. The district court granted Central County's motion for summary judgment, but we conclude that there is a genuine issue of material fact for trial. We therefore reverse and remand for further proceedings.

## I.

Judith Rinesmith worked as the Administrator for Central County Fire & Rescue for twelve years. Rinesmith testified that in that capacity, she was responsible for human resources, including workers' compensation claims and benefits. As part of her responsibilities, she was liaison with the workers' compensation carrier, and handled the reporting, paperwork, and documentation for workers' compensation claims.

On July 14, 2001, Matt Dermody, a firefighter employed by Central County, injured himself on the job. Dermody received medical treatment and was released for light work by Central County's doctor. Dermody testified that he failed to appear for light duty work, and when Rinesmith called his home to find out why he was not working, Dermody indicated that he had to watch his children and asked if he could take vacation or sick time instead of performing light duty. Deputy Chief Russ Mason testified that Dermody spoke with him and made a similar inquiry. Mason informed Dermody that Central County would have to determine whether the proposed leave time would be acceptable.

Rinesmith testified that she contacted Central County's workers' compensation carrier to inquire about the Dermody matter, and was informed that the insurance carrier would not pay for leave because Dermody was cleared for light work. Rinesmith further testified that the insurance company suggested that she draft a release for Dermody. Despite never having drafted a release for that or any other purpose, Rinesmith created one. Rinesmith said she explained the situation to Deputy Chief Mason, and he told her to "[g]o ahead and do it." The release drafted by Rinesmith concluded by saying, "[b]ecause of a babysitting problem, I am electing to take voluntary sick and vacation time instead of doing the light duty, as required by the Memorandum of Understanding. I will not at any time now or in the future, try to claim this accident as a lost time accident."

Dermody contacted his shop steward and a union attorney about the release. Deputy Chief Mason testified that the shop steward later told him that there was a problem related to Dermody's workers' compensation, and that the union's attorney wanted to speak with Mason or Chief Frank Schlenke. Mason recognized that the release was problematic, and that it exposed Central County to potential liability.

The Board of Directors for Central County held ultimate authority over Central County Fire & Rescue. During the relevant period, the three members of the Board were one man, David Tilley, and two women, Cynthia Loehrer and Daryl Varner. At a meeting on September 20, 2001, the Board, by a two to one vote, recommended the discharge of Judith Rinesmith and ordered a special meeting to consider her response. The Board concluded that the release prepared by Rinesmith constituted a release and waiver of Dermody's lawful claim for benefits, and that his substantial rights would have been unlawfully compromised had he signed the document. The Board thus determined that the attempted use of the release was "a matter of gross incompetence and misconduct."

Following the vote, Daryl Varner, the dissenting member of the Board, mentioned to Chief Schlenke that "we wouldn't be going through this, if Judith was one of the fellows." In an interview with the EEOC, Varner said that her statement concerning "the fellows" referred to "firefighters, as I think about it, just the District as a whole, mainly firefighters." At a deposition in this case, Varner said "the fellows" referred to union members, and she meant that Rinesmith was treated differently because she was not a firefighter and therefore not a member of the union. (App. 362).

At a follow-up meeting of the Board on October 4, Varner changed her vote. Varner explained that she ultimately voted against retaining Rinesmith, because "I think the fact that Judith had put the District at risk, and that she did not, in my opinion, see that she had put the District at risk, and as a Trustee of the Fire District,

I felt like that she needed to be terminated for that reason." Rinesmith's termination was a departure from Central County's ordinary four-step progressive disciplinary procedure, which escalates from an oral warning to a written warning to a suspension, and finally to a discharge. Varner testified that the Board thought that Rinesmith's violation was so serious that the Board moved directly to the final step.

II.

The district court held that, "[c]onstruing Plaintiff's evidence in the light most favorable to her, . . . the evidence, whether direct or indirect, is insufficient to indicate that gender played a role in the Board's decision to terminate Plaintiff's employment." On this basis, the court granted summary judgment in favor of Central County, and dismissed the case. We conclude, however, that the statement by Board member Varner is sufficient direct evidence of discrimination to create a genuine issue of fact for trial.[1]

The principal question on this appeal is whether Varner's statement to the effect that Rinesmith would not have been fired if she were "one of the fellows" constitutes sufficient direct evidence of employment discrimination under our precedents to bring the case to trial. Direct evidence is "not the converse of circumstantial evidence," but rather "evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action." *Griffith v. Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004) (quoting *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997)). "Comments which demonstrate a 'discriminatory animus in the decisional process' or those uttered by individuals closely involved in employment decisions may constitute direct evidence."

---

[1]We analyze Rinesmith's claims under Title VII and the Missouri Human Rights Act using the same legal principles. *Duncan v. General Motors Corp.*, 300 F.3d 928, 930 n.2 (8th Cir. 2002).

*Beshears v. Asbill*, 930 F.2d 1348, 1354 (8th Cir. 1991) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 278 (1989) (O'Connor, J., concurring)) (internal citation omitted).

In *EEOC v. Liberal R-II School District*, 314 F.3d 920 (8th Cir. 2002), we considered similar evidence in the context of suit alleging age discrimination. In that case, the plaintiff, a school bus driver, was terminated at age 70. The plaintiff bus driver introduced evidence that the superintendent of schools, who was present when the Board of Education decided to fire the plaintiff, told the plaintiff that the Board thought he was "too old to drive a bus." *Id.* at 924. Although the superintendent was not a decisionmaker, he was "closely involved in the decisionmaking process" and "was directed to express the decision of the decisionmakers to the employee." *Id*. If taken in the light most favorable to the plaintiff, his "expressions indicated the actual decisionmakers may have based their decisions, at least in part, on age-based animus." *Id.*

Similarly, although Varner initially voted against removing Rinesmith from her position, she was a member of the decisionmaking body, closely involved in the decisionmaking process, and present when the majority of the Board of Directors decided to suspend Rinesmith and recommend her discharge. Rinesmith contends that Varner's statement, taken in the light most favorable to Rinesmith, supports an inference that those who made the decision based it, at least in part, on the fact that Rinesmith was a woman, rather than "one of the fellows." In its only response to this argument, Central County insists, based on Varner's later testimony, that her reference to "the fellows" meant only that Rinesmith would have preserved her job if she were a firefighter, or a member of the union, or a team player. These are reasonable interpretations, but the statement also reasonably bears the meaning that the termination would not have occurred if Rinesmith had been a man. *See Webster's Third New International Dictionary* 836 (1993) (defining "fellow," *inter alia*, as "man"). Given the different potential interpretations of Varner's statement to Chief

Schlenke, and Varner's own arguably shifting explanations, it remains for a finder of fact to determine whether her explanation is credible, or whether the evidence better supports an inference that she really meant the decisionmakers had acted based in part of Rinesmith's sex. Taken in the light most favorable to Rinesmith, we conclude that Varner's statement is sufficient to create a genuine issue for trial.

That two members of the Board of Directors were women does not preclude a finding of sex discrimination. Women may discriminate against women, *see Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79 (1998), and "[b]ecause of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group." *Castaneda v. Partida*, 430 U.S. 482, 499 (1977). Nor would Rinesmith's claim be defeated by a showing that the Board would have terminated her even in the absence of an impermissible motivating factor. That defense pertains only to the appropriate remedy in a Title VII sex discrimination case. *Wolff v. Brown*, 128 F.3d 682, 683-84 (8th Cir. 1997). In any event, we cannot say the record establishes beyond dispute that Rinesmith's conduct would have led the Board to reach the same decision regardless whether she was "one of the fellows." Viewed in the light most favorable to Rinesmith, Varner's comment refutes that proposition, because it suggests that a "fellow" who made the same serious mistake would not have been fired.

In her brief, Rinesmith points to other evidence that she says would support a finding of sex discrimination. We find this evidence underwhelming, and absent the direct evidence from Varner's statement, we think the district court's grant of summary judgment could be sustained. But as in *Liberal R-II School District*, we must recognize that although Rinesmith "may not have a particularly strong case for a jury, we are not the jury." 314 F.3d at 923. Our duty is to view the record in the light most favorable to Rinesmith, and having done so, we find a genuine issue for trial.

\*     \*     \*

The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____